NATHANIEL A. SHOWERS,

                Plaintiff,

v.                                                   Case No. 20-cv-1245-pp

LINDA R. KOSTERMAN, CAROLYN S. HAGERTY,
CRYSTAL L. KARWOWSKI, DEANGELO CAMPBELL,
JACQUELINE M. HEDIT, and JESSICA L. STUDZINSKI,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Nathaniel A. Showers, an inmate at the Wisconsin Secure Program Facility who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants failed to protect him from his cellmate. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.   Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 18, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $5.41. Dkt. No. 6. The court received that fee on August 31, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

2

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff sues correction sergeants Linda R. Kosterman and Carolyn S. Hagerty;[1] social worker Jacqueline M. Heidt;[2] and correctional officers Crystal L. Karwowski, Deangelo Campbell and Jessica L. Studzinski. Dkt. No. 1

---

[1] The plaintiff also spells this defendant's name "Hegerty." The court will use the spelling "Hagerty," which the plaintiff lists in the caption and uses most often in the complaint.

[2] The plaintiff lists Heidt as a correctional officer but later describes her as a social worker. Dkt. No. 1 at ¶17. He also spells her name as "Hedit" in the caption, but uses "Heidt" in the body of the complaint.

3

at ¶¶3–8. All off the defendants allegedly worked at Racine Correctional Institution at the time of the events the plaintiff describes. Id.

The plaintiff alleges that on October 10, 2018, he was an inmate at Racine and was housed with another inmate named James Gardetto. Dkt. No. 1 at ¶9. He alleges that on that date, Gardetto "groped" him by grabbing his buttocks; he says that this touching "was unsolicited and unwanted." Id. at ¶10. The plaintiff states that he was "[e]mbarrassed" and that he told third shift sergeant Blundon and C.O. Mayfield (who are not defendants) that he wasn't comfortable in that cell. Id. at ¶11. The plaintiff says that Blundon checked to see who was in the cell with the plaintiff, then told the plaintiff that he knew who Gardetto was and that he was "[a] weird one." Id. Blundon told the plaintiff that "Gardetto had got many complaints from his other cellmates and all staff know who he was and understood why plaintiff would want to move and would help him move but because it was 3rd shift he would leave a message for 1st shift to do it." Id. The plaintiff says he was relieved that he'd be moved in the morning and would not be required "to tell the embarrassing ordeal of being molested he returned to his cell." Id.

The next morning the plaintiff went to Hagerty (who was working first shift) to confirm the cell change, and to make sure the third shift had told first shift about the move. Dkt. No. 1 at ¶12. Hagerty told the plaintiff that third shift hadn't left any message and that she was not aware of any moves. Id. The plaintiff told Hagerty he was uncomfortable in the cell with his cellmate but did not provide any other information because he was embarrassed and ashamed

4

and didn't want to tell anyone he'd been molested. Id. "In hopes to avoid going over the ordeal" the plaintiff told Hagerty that his cellmate had been watching him sleep. Id. Hagerty said she could not move the plaintiff because Sergeant Peters (who is not a defendant) "did the moves at the end of the month." Id. The plaintiff says that it became "apparent" that Hagerty "was unwilling to move the plaintiff," so he confessed to her that he had been assaulted by his cellmate while he was sleeping, that his cellmate had grabbed his buttocks and that the plaintiff no longer felt safe in the cell. Id. Hagerty told the plaintiff she would speak with unit manager Studzinski about the request. Id. Hagerty later told the plaintiff she had spoken with Studzinski and stated that the plaintiff "should find another person to cell with." Id. at ¶13.

Second shift Sergeant Kosterman and Officers Karwowski and Campbell took over for Hagerty. Id. at ¶14. Hagerty told them about the plaintiff's situation; Kosterman allegedly responded that she was not doing any more moves and did not care what the situation was. Id. The plaintiff says he tried to reason with Kosterman "and got nowhere;" he says that she cut him off, saying that he needed to remove himself from the officer station or he would get a conduct report. Id. The plaintiff left the station, but said that if his cellmate touched him again, he "would have no choice but to defend himself." Id. at ¶15.

The plaintiff alleges that later that day, he realized that Gardetto had been opening and eating the plaintiff's food from the canteen. Id. at ¶16. The plaintiff returned to Kosterman, told her about "the issue and restated the

5

sexual assault claim." Id. The plaintiff says that Kosterman "huffed as if annoyed" but said that she would talk to Gardetto. Id. The complaint says that

> [s]eeing his request for help was going to land him in segregation with a conduct report and knowing if plaintiff stayed in the cell with his abuser he would end up in segregation for defending himself plaintiff packed his things reasoning he would rather walk himself to segregation to avoid the negative reports.

Id.

Because he felt he was getting nowhere with the security staff, the plaintiff went to speak to social worker Heidt. Id. at ¶17. He told Heidt about the sexual assault and his eaten and missing food items. Id. Heidt told the plaintiff "she had nothing to do with moves" and "dismissed" the plaintiff's complaint. Id.

Later that day, Kosterman told the plaintiff that she had talked to Gardetto, who "denied everything" but agreed not to touch the plaintiff and his things. Id. at ¶18. The plaintiff told Kosterman that he still did not feel safe in a cell with Gardetto. Id. Kosterman looked at the plaintiff and said that he needed to "grow up and be a man" and "get along with his cellmate." Id.

The plaintiff says that he gave up; he did not want to risk "an altercation with his cellmate." Id. at ¶19. He "went to grab his T.L.U. [temporary lock up] belongings, as he was preparing to 'check into the hole'/segregation." Id. The plaintiff says that he noticed he had left some photos on his bulletin board, and that as he went to get them "Gardetto reached and grabbed plaintiff groin squeezing it causing plaintiff a lot of pain." Id. The plaintiff reiterates that this

6

touch, like the first one, was unsolicited and unwanted. Id. The plaintiff punched Gardetto and went to segregation. Id.

The plaintiff reported the "sexual assault" to the person who "did" his T.L.U. placement, Captain Dietz (who is not a defendant). Id. at ¶20. The plaintiff says that while he was reporting this, Dietz stopped to speak with Security Director Wells (who is not a defendant); the plaintiff says he could hear Dietz saying only, "he was involved in the incident on Walworth." Id. Dietz then told the plaintiff he was being placed on temporary lock-up for assault. Id. When the plaintiff asked what about his sexual-assault complaint, "he was told it would be address at his discipline hearing." Id.

The plaintiff alleges that while in segregation, he tried to get help for the sexual assault claim by "making a P.R.E.A. [Prison Rape Elimination Act] call" and making verbal complaints to psychological services unit staff Todd, L.T. Amin, L.T. Lundervill and Captain Giernoth (none of whom are defendants). Dkt. No. 1, ¶21. The plaintiff indicates that these individuals responded that "they would look into it," but that a week passed and the plaintiff saw them again, asking why no one had contacted him to investigate and why a P.R.E.A. representative hadn't come to talk to him. Id. The plaintiff says he made "[t]hese reports" every week for five months before an investigation was started in January. Id. The plaintiff asserts that "[t]his was done in an attempt to cover up plaintiff abuse." Id.

The plaintiff asserts that the defendants failed to protect him from Gardetto or report his abuse. Dkt. No. 1 at ¶22. He sues under federal and state law and seeks monetary damages. Id. at ¶¶23 & G.A–B.

C.  Analysis

The court analyzes the plaintiff's claims that the defendants failed to protect him under the Eighth Amendment, which prohibits cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates"). An Eighth Amendment claim consists of both objective and subjective components. Farmer, 511 U.S. at 834. To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. It is not enough to demonstrate "a generalized risk" of harm. Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011) (citing Brown v. Budz, 398 F.3d 904, 909, 913 (7th Cir. 2005)). The plaintiff instead must show that there was "a tangible threat to his safety or well-being" or, in other words, a risk "so great that it is almost certain to materialize if nothing is done." Id. (citing Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008) and Brown, 398 F.3d at 911 (internal quotations omitted)). "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is

8

significant." Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012) (citations omitted).

"[A] prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008). To satisfy the subjective component, the plaintiff must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. The court will not find a prison official liable under the Eighth Amendment unless she subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. Id. at 837; Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). A prison official's response to the inmate's concern "may be reasonable even if it fails to avert the harm." Dale, 548 F.3d at 569 (citing Borello v. Allison, 446 F.3d 742, 747 (7th Cir. 2006)).

The plaintiff has not stated a claim against Hagerty. He alleges that when he told Hagerty that he wasn't comfortable in his current cell, Hagerty explained that she couldn't move him because another staff member, Sgt. Peters, "did the moves at the end of the month." Dkt. No. 1 at ¶12. When he then told Hagerty what Gardetto had done, Hagerty agreed to talk to the unit manager. Hagerty later told the plaintiff that she had talked with Unit Manager Studzinski and that the plaintiff "should find another person to cell with." Id. at ¶13. By the plaintiff's own description, Hagerty was not deliberately indifferent to the risk the plaintiff described. She listened to him and told him that she had discussed his concerns with the unit manager.

9

Nor has the plaintiff stated a claim against Studzinski. The only allegation the plaintiff makes about Studzinski is that Hagerty told the plaintiff that she had discussed his allegations of assault with Studzinski and that the plaintiff should find someone else to share a cell with. The plaintiff has not alleged that Studzinski refused to accommodate his request for another cell or ignored his request. The plaintiff does not allege that Studzinski had the authority to move him or to get him a different cellmate. The plaintiff did not get moved to another cell, but he has not asserted any facts to support the conclusion that Studzinski was responsible for the fact that he was not moved.

Nor does the plaintiff state a claim against Karwowski or Campbell. The plaintiff alleges that Karwowski and Campbell (along with Kosterman) relieved Hagerty and that Hagerty told them "about the situation." The plaintiff has not alleged that Karwowski or Campbell had the authority to move him or to change his cellmate and he has not alleged that they refused to do so or prevented anyone else from doing so. He appears to allege only that Karwowski and Campbell were present when Hagerty reported the situation. This is not enough to state a claim for deliberate indifference against Karwowski or Campbell.

The plaintiff alleges that Kosterman's first response after hearing what Hagerty had to say was that she was "not doing any moves and she did not care what the situation was," and he says that when he tried to reason with her, she cut him off and told him to get away from the officers' station or he'd get a conduct report. Dkt. No. 1 at ¶14. If that was all that had happened—if

Kosterman had been told that the plaintiff's cellmate had sexually assaulted him and simply refused to take any action (and threatened the plaintiff with a conduct report, to boot)—that would state a claim for deliberate indifference at the pleading stage. But the plaintiff went back to Kosterman, telling her directly that he believed Gardetto was taking his canteen food and describing the sexual assault. While Kosterman didn't appear to the plaintiff to be happy about it—he says that she "huffed as if annoyed," id. at ¶16—she did agree to talk with Gardetto. It appears that Kosterman did what she said she would do, because later that day, she told the plaintiff that she had talked to Gardetto, and that while he had denied touching the plaintiff or eating his food, Gardetto had agreed not to touch the plaintiff or his belongings. This looks less like deliberate indifference.

The plaintiff says he told Kosterman that despite what Gardetto had told Kosterman, the plaintiff still didn't feel safe being in a cell with Gardetto. He alleges that Kosterman responded by telling him that he needed to grow up and be a man and that he needed to get along with his cellmate. It is a close call whether these allegations shift the balance back toward deliberate indifference. At this early stage, taking the facts in the light most favorable to the plaintiff, the court concludes that it does. The plaintiff alleges that Kosterman knew that Gardetto had touched a private part of the plaintiff's body and that this had caused him to feel unsafe. She reluctantly talked with Gardetto, who promised not to do it again. But the plaintiff told Kosterman that he was still concerned. At this point, Kosterman basically told the plaintiff to get over it. At the

11

pleadings stage, that is enough to state a claim against Kosterman for deliberate indifference.

The plaintiff has not stated a claim against Heidt. The plaintiff alleges that Heidt did not permit him a cell change because she "has nothing to do with moves." Heidt appears to have told the plaintiff that she did not have the authority to move an inmate from one cell to another, and the plaintiff does not allege that she had that authority. Nor does he allege what Heidt could have done to help him that he had not already done himself. The plaintiff does not state a claim against Heidt for not doing something she was not authorized to do.

Nor has the plaintiff stated a claim that any of the named defendants were involved with the P.R.E.A. report or that any of the named defendants contributed to a delay of the P.R.E.A. investigation. He seems to make these claims against a group of individuals he did not name as defendants, not against Kosterman, Hagerty, Karwowski, Campbell, Heidt or Studzinski. If the plaintiff meant to allege that Kosterman, Karwowski, Campbell, Heidt or Studzinski should have done something to get him moved to a different cell after Gardetto assaulted him the second time, he has alleged no facts to support that claim. He has not indicated that he told any of them about the second assault or about the P.R.E.A. claim. He has not alleged that after the second assault, he asked anyone to put him in a different cell (in fact, the plaintiff went into temporary lock up after the second assault).

12

The plaintiff asked the court to exercise supplemental jurisdiction over state-law claims resulting from "[t]he actions of unit staff in failing to report and protect plaintiff against Gardetto when they were made aware of his predatory intent and sexual motive." Dkt. No. 1 at ¶22. See 28 U.S.C. § 1367(c)(3). The plaintiff mentions breach of duty and intentional infliction of emotional distress as the state-law claims. Id. The plaintiff does not explain what state-law duty Kosterman violated. The court will not allow him to proceed on a general breach of duty claim. To state a claim for intentional infliction of emotional distress, a plaintiff must show "four elements: (1) the defendant intended to cause emotional distress by his or her conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct was a cause-in-fact of the plaintiff's emotional distress: and (4) that the plaintiff suffered an extreme and disabling response to the defendant's conduct." Kopp v. Sch. Dist. of Crivitz, 378 Wis. 2d 740, 2017 WL 4413020, at *10 (Ct. App. 2017) (citing Terry v. Journal Broad. Corp., 351 Wis. 2d 479, 515 (Ct. App. 2013)). For a claim of intentional infliction of emotional distress to be actionable, "[t]he average member of the community must regard the defendant's conduct in relation to the plaintiff, as being a complete denial of the plaintiff's dignity as a person." Id. (quoting Alsteen v. Gehl, 21 Wis. 2d 349, 359-60 (Wis. 1963)). The plaintiff has not alleged the kind of "extreme and outrageous" conduct required for intentional infliction of emotional distress, or the kind of "extreme and disabling response" the tort requires. The court will not allow the plaintiff to

13

proceed on a claim of intentional infliction of emotional distress against Kosterman.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that defendants Hagerty, Karwowski, Campbell, Heidt and Studzinski are **DISMISSED**.

The court **DECLINES** to exercise supplemental jurisdiction over any claims arising under state law and **DISMISSES** those state law claims without prejudice.

The court **ORDERS** that the plaintiff may proceed on a claim of Eighth Amendment deliberate indifference against defendant Linda R. Kosterman.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order will be electronically transmitted to the Wisconsin Department of Justice for service on defendant Linda R. Kosterman. Under the informal service agreement, the court **ORDERS** defendant Kosterman to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$344.59** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and for filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 7th day of October, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**